UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **LOUISE TRAUMA CENTER, LLC**, <br><br> Plaintiff, <br><br> v. <br><br> **UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT**, *et al.*, <br><br> Defendants. | Civil Action No. 20-cv-3787 (TSC) |

### MEMORANDUM OPINION

Plaintiff Louise Trauma Center, LLC has sued the United States Immigration and Customs Enforcement agency ("ICE") and the Department of Homeland Security ("DHS") (collectively, "Defendants") under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, et seq. Before the court are Defendants' Motion for Summary Judgment, ECF No. 26; Plaintiff's Cross-Motion for Summary Judgment, ECF No. 29; and Plaintiff's Motions for Leave to File a Sur-Reply, ECF No. 38, 40. The court concludes that the record is insufficient to determine whether Defendants conducted an adequate search for records responsive to Plaintiff's First and Second FOIA requests, that reviewing the redacted documents would enable evaluation of Defendants' privilege claims under FOIA Exemption 5, and that Plaintiff's Fourth Request fails to reasonably describe the requested records. For the reasons explained below, the court will therefore GRANT in part and DENY without prejudice in part Defendants' motion; DENY without prejudice Plaintiff's cross-motion; and DENY Plaintiff's motions for leave to file a sur-reply.

I.      BACKGROUND

Plaintiff, a nonprofit organization supporting immigrant women who have suffered gender-based violence, brought this action to compel disclosure of information responsive to six FOIA requests. Compl. ¶¶ 4, 7–40, ECF No. 1. Defendants have satisfied three requests. Pl.'s Opp'n and Cross-Mot. for Summ. J. at 7, ECF No. 29 ("Pl.'s Cross-MSJ."). Both parties seek summary judgment on the remaining three requests. *Id.* at 7–8; Defs.' Mot. for Summ. J. at 1 & n.1, ECF No. 26 ("Defs.' MSJ"). In support of their motion, Defendants filed a statement of undisputed facts and two declarations from Lynnea Schurkamp, a Deputy FOIA Officer at ICE. *See generally* Defs.' Statement of Material Facts, ECF No. 26-1 ("Defs.' SOF"); Decl. of Lynnea Schurkamp, ECF No. 27-1 ("Schurkamp Decl."); Suppl. Decl. of Lynnea Schurkamp, ECF No. 35-1 ("Suppl. Schurkamp Decl."). Plaintiff filed its own statement of undisputed facts, Pl.'s Statement of Material Facts, ECF No. 29-1 ("Pl.'s SOF"), to which Defendants responded, Defs.' Response to Pl.'s SOF, ECF No. 32-1 ("Defs.' SOF Resp."). The court relies on these materials to summarize the FOIA requests, ICE's response, and the remaining disputes.[1]

---

[1] Plaintiff's First, Second, and Fourth Requests, corresponding to Counts I, II, and IV, remain contested. Pl.'s Cross-MSJ at 7–8. Plaintiff does not challenge Defendants' response to the Third, Fifth, and Sixth Requests, corresponding to Counts III, V, and VI. *Id.*

Defendants moved for summary judgment on Plaintiff's Fifth Request, believing it to be contested. Defs.' MSJ at 1. Because Plaintiff does not contest the adequacy of Defendants' response to that request, the court will deny Defendants' motion for summary judgment as moot and dismiss Count V. *See Shapiro v. U.S. Dep't of Just.*, 239 F. Supp. 3d 100, 106 n. 1 (D.D.C. 2017) ("Where the FOIA requester responds to the government's motion for summary judgment without taking issue with the government's decision to withhold or to redact documents, the Court can reasonably infer that the FOIA requester does not seek those specific records or information and that, as to those records or information, there is no case or controversy sufficient to sustain the Court's jurisdiction.").

### A. Count I: Baltimore Instructions

Plaintiff's First Request sought "all instructions, training manuals, and guidance given to the ICE lawyers at the office of Chief Counsel, 31 Hopkins Plaza, Baltimore MD 21201, provided from January 1, 2020 to the date [the Agency] begin[s] to process this request." Defs.' SOF ¶ 2. At Defendants' request, Plaintiff clarified that it sought training materials related to "asylum, withholding of removal, Convention Against Torture, and how to cross-examine." *Id.* ¶ 16.

ICE's FOIA Office determined the Office of Principal Legal Advisor ("OPLA") in Baltimore was likely to possess responsive materials and identified Baltimore's Chief Counsel as the "person most likely to have responsive records," Schurkamp Decl. ¶ 23, and "know all locations likely to contain responsive records." Suppl. Schurkamp Decl. ¶ 10. Baltimore's Chief Counsel "searched her email" and "the office's SharePoint website" using the following search terms: "'instructions, training and guidance,' as well as 'asylum,' 'CAT,' 'torture' and 'cross' 'asylum,' 'CAT,' 'torture' and 'cross.'"[2] *Id.* The "Baltimore Chief Counsel located 361 pages" for review by the ICE FOIA Office. *Id.* It is unclear whether any other individuals in ICE's Baltimore Field Office conducted searches. Pl.'s SOF ¶¶ 5–6; Defs.' SOF at 3–4. Plaintiff contends that the "Associate Legal Advisor in Baltimore" did not conduct any searches and Defendants refuse to confirm or deny that assertion. Defs.' SOF Resp. at 4.

On July 19, 2021, ICE produced 361 pages responsive to Plaintiff's First Request with redactions pursuant to FOIA Exemptions 5, 6, and 7(c). Defs.' SOF ¶ 18. In February 2022, ICE re-reviewed the production to ensure non-exempt material was properly segregated and

---

[2] Defendants do not explain how the search terms were applied. For instance, it is unclear whether Defendants conducted single word searches or used connectors to identify documents with multiple terms. *See* Suppl. Schurkamp Decl. ¶ 10.

produced. *Id.* ¶ 35. It re-produced the responsive records with revised redactions in April 2022. *Id.* ¶ 37.

### B. Count II: Arlington Instructions

Plaintiff's Second Request sought "all instructions, training manuals, and guidance given to the ICE lawyers at the Office of Chief Counsel, 1901 South Bell Street, Arlington VA, provided from January 1, 2020 to the date [ICE] begin[s] to process this request." *Id.* ¶ 4.

ICE's FOIA Office determined the OPLA Field Legal Office in Arlington likely had responsive materials and identified Arlington's Deputy Chief Counsel as the person "most likely to have responsive records," Schurkamp Decl. ¶ 26, and "know all locations likely to contain responsive records," Suppl. Schurkamp Decl. ¶ 9. Defendants' original declaration stated that Arlington's "Associate Legal Advisor" conducted the search, but the supplemental declaration clarified that Arlington's Deputy Chief Counsel was actually responsible. *Id.* ¶ 8 n.4. Arlington's Deputy Chief Counsel used search terms to identify 246 potentially responsive pages on her computer and in her Outlook email. *Id.* ¶ 9. Defendants do not identify the specific search terms. *See* Schurkamp Decl. ¶ 26 (describing Arlington's Deputy Chief Counsel's search as "using search terms responsive to Plaintiff's FOIA Request[,] [s]pecifically, she searched her Outlook emails for attorney trainings 'conducted at the OPLA-Washington D.C. offices' and the 'Chief Counsel's Arlington Office.'"); Suppl. Schurkamp Decl. ¶ 9 ("The search terms, as explained in my previous declaration, encompass a complete search for 'instructions, training and guidance,' using the search terms reasonably likely to retrieve any responsive documents."). It is unclear whether any other individuals in the Arlington Field Office conducted searches. Pl.'s SOF ¶¶ 8–12; Defs.' SOF Resp. at 2–3. Plaintiff contends that Arlington's Chief Counsel and Associate Legal Advisor did not conduct any searches. Pl.'s SOF ¶¶ 8–12. Defendants deny

that assertion but do not explain the searches Arlington's Chief Counsel or Associate Legal Advisor conducted. Defs.' SOF Resp. at 5-6.

On July 19, 2021, ICE produced 246 pages responsive to Plaintiff's Second Request with redactions pursuant to FOIA Exemptions 5, 6, and 7(c). Defs.' SOF ¶ 24. ICE re-reviewed its FOIA Exemption 5 redactions and reproduced the materials in April 2022. *Id.* ¶ 35.

### C. Count IV: Information Processing System Records

Plaintiff's Fourth Request sought "all records concerning [the Agency's] information processing system," "what electronic searches it permits," and "all records concerning 'topic' fields." Schurkamp Decl. ¶ 8. ICE asked Plaintiff to "narrow the request because it is unreasonably burdensome and not reasonably described." Defs.' SOF ¶ 9. Plaintiff responded by email, stating "[w]e do not know what records you have; therefore, we cannot describe them." Suppl. Schurkamp Decl. ¶ 5 (quoting Compl. Ex. 4 at 4, ECF No. 1-4). After further discussions, Plaintiff ultimately clarified that it sought

> Records describing your information processing system, what electronic searches it permits and what "topic fields" it has, concerning cases at the Arlington VA Immigration Court. We are interested in these cases at the Arlington Court: 1) affirmative asylum applicants set for master hearings, and 2) cancellation of removal cases now set for individual hearings. In other words, we are interested in knowing if your information processing system allows a search for 1) affirmative asylum applicants set for master hearings, and 2) cancellation of removal cases now set for Individual hearings.

Defs.' SOF ¶ 31 (quoting Defs' Ex. I-1, ECF No. 26-14). ICE informed Plaintiff that such information "is within the sole possession and control of [the Executive Office of Immigration Review] and is not a computer or information system managed by ICE." *Id.* ¶ 32. The parties agree that ICE has other information management systems, such as "OCMS," *see* Defs.' SOF Resp. at 2, but dispute whether such systems fall within Plaintiff's request, *id.*; Pl.'s Cross-MSJ at 10–11.

## II.     LEGAL STANDARD

### A. Summary Judgment

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Waterhouse v. District of Columbia*, 298 F.3d 989, 991 (D.C. Cir. 2002). A factual dispute is "material" if the facts involved "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby*, 467 U.S. 242, 248 (1986). A "dispute about a material fact is 'genuine'. . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Courts "must view all facts, and draw all reasonable inferences, in the light most favorable to the party opposing the motion." *Lane v. District of Columbia*, 887 F.3d 480, 487 (D.C. Cir. 2018) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986)).

### B. FOIA

"FOIA provides a 'statutory right of public access to documents and records' held by federal government agencies.'" *Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Just.*, 602 F. Supp. 2d 121, 123 (D.D.C. 2009) (quoting *Pratt v. Webster*, 673 F.2d 408, 413 (D.C. Cir. 1982)). Federal agencies must comply with requests to make records available to the public, unless such "information is exempted under [one of nine] clearly delineated statutory [exemptions]." *Id.* (internal quotation marks omitted); *see also* 5 U.S.C. §§ 552(a)–(b). To comply with a FOIA request, agencies must "conduct an adequate search for responsive records." *Edelman v. SEC*, 172 F. Supp. 3d 133, 144 (D.D.C. 2016). Failure to do so "constitutes an improper withholding." *Schoenman v. FBI*, 764 F. Supp. 2d 40, 45 (D.D.C. 2011).

If an agency withholds information under a FOIA exemption, it bears the burden of showing the withheld material fits within the exemption. *Watkins L. & Advoc., PLLC v. U.S. Dep't of Just.*, 78 F.4th 436, 451 (D.C. Cir. 2023) (citing *Reps. Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 361 (D.C. Cir. 2021)). "An agency can carry that burden by submitting a *Vaughn* index that adequately explains the decision to withhold certain documents." *Id.* (citing *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973)). The "agency must prove that each document that falls within the class requested either has been produced, is unidentifiable or is wholly exempt from the Act's inspection requirements." *Weisberg v. U.S. Dep't of Just.*, 627 F.2d 365, 368 (D.C. Cir. 1980) (citation omitted).

### III.   ANALYSIS

The parties raise three issues for summary judgment: (1) whether Defendants conducted an adequate search for records responsive to Plaintiff's First and Second Requests, (2) whether Defendants appropriately redacted two documents under FOIA Exemption 5, and (3) whether Plaintiff's Fourth Request creates an obligation to search for records.

**A. Adequacy of Search**

To obtain summary judgment, the agency must demonstrate that "it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Baker & Hostetler LLP v. U.S. Dep't of Com.*, 473 F.3d 312, 318 (D.C. Cir. 2006). The agency may submit "reasonably detailed, nonconclusory affidavits [or declarations] describing its efforts" to meet that burden. *Id.* Courts accord agency affidavits "a presumption of good faith that cannot be rebutted by 'speculative claims about the existence and discoverability of other documents.'" *Am. Oversight v. U.S. Dep't of Health and Hum. Servs.*, 101 F.4th 909, 923 (D.C. Cir. 2024) (quoting *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981)). But "a conclusory affidavit that gives

'no detail as to the scope of the examination ... is insufficient as a matter of law'" to demonstrate an adequate search. *Am.-Arab Anti-Discrimination Comm. v. U.S. Dep't of Homeland Sec.*, 516 F. Supp. 2d 83, 87 (D.D.C. 2007) (quoting *Weisberg v. U.S. Dep't of Just.*, 627 F.2d 365, 370 (D.C. Cir. 1980)).

The court is unable to determine from the record whether ICE conducted an adequate search. Defendants' declarations state that a single individual, "the person most likely to have responsive records" in each office, searched their computer and Outlook email for records responsive to Plaintiff's First and Second Requests. Schurkamp Decl. ¶¶ 23–24. After Plaintiff pointed out that confining the search to the "most likely" location is insufficient, Pl.'s Cross-MSJ at 15–16; *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 67 (D.C. Cir. 1990), Defendants submitted a supplemental declaration stating that those individuals would "know *all locations* likely to contain responsive records," Suppl. Schurkamp Declaration ¶¶ 9–10 (emphasis added). But Defendants failed to connect the dots. Even if the individuals tasked with searching would know "all locations," *id.*, Defendants did not state that they in fact searched all those locations. If Defendants did search all possible locations, but only searched one individual's computer and Outlook account in each office (and a SharePoint site in Baltimore), they must explain why "no other record systems are reasonably likely to contain" the responsive records. *Aguiar v. DEA*, 865 F.3d 730, 739 (D.C. Cir. 2017). If other locations are "likely to turn up the information requested," "the agency cannot limit its search to only one record system." *Oglesby*, 920 F.2d at 68. The court cannot determine from Defendants' "bald statements" whether it adequately searched all record systems likely to produce responsive records. *Davidson v. U.S. Dep't of State*, 206 F. Supp. 3d 178, 191 (D.D.C. 2016). The search scope is particularly concerning because Plaintiff has identified other potential search locations, specifically, additional lawyers'

email accounts in the Baltimore and Arlington field offices. *See* Pl.'s SOF ¶¶ 6–8. Although ICE is not required to search every location identified by the requester, it must provide an adequate explanation for not searching other files. *Davidson*, 206 F. Supp. 3d at 191. Here, Defendants' declarations fail to show "with reasonable detail, that the search method . . . was reasonably calculated to uncover all relevant documents." *Oglesby*, 920 F.2d at 68.

Defendants' declarations also fail to justify discrepancies in search terms and methodology between the field offices. *See New Orleans Workers' Ctr for Racial Just. v. U.S. Immigr. & Customs Enf't*, 373 F. Supp. 3d 16, 46–47 (D.D.C. 2019); Defs.' SOF Resp. at 6–7. FOIA does not mandate uniform searches across different agency offices, but it does require reasonable explanations for variances in scope and methodology when searching for similar records from similar offices. *See New Orleans Workers'*, 373 F. Supp. 3d at 47 ("[D]efendant's declarations are also insufficient because the defendant failed to explain the wide variance in the search terms used by custodians and offices"); *Tushnet v. U.S. Immigr. & Customs Enf't*, 246 F. Supp. 3d 422, 435 (D.D.C. 2017) ("ICE's declarations fall short of explaining why such disparate searches were reasonable for particular offices."). Defendants' declarations do not explain why Baltimore and Arlington offices took noticeably different approaches to identifying similar records. Defs.' SOF Resp. at 6–7. It is unclear, for example, why only the Baltimore office searched a SharePoint site, whether the Arlington office uses a SharePoint site or comparable system, whether the offices used the same search terms, and why different search terms were used to search different systems. *See* Schurkamp Decl. ¶ 23–26; Suppl. Schurkamp Decl. ¶¶ 9–10.

Finally, Defendants' declarations lack basic information relevant to the court's assessment, most importantly, a complete search terms list. *See, e.g.*, *Debrew v. Atwood*, 792

Page 9 of 16

F.3d 118, 122 (D.C. Cir. 2015). In this Circuit, "[a] reasonably detailed affidavit, setting forth the search terms and the type of search performed . . . is necessary . . . to allow the district court to determine if the search was adequate in order to grant summary judgment." *Oglesby*, 920 F.2d at 68. Defendants' declarations provide an inconsistent and confusing search term list. The original declaration states that the Baltimore office used the term "OPLA Everywhere" to search SharePoint and the terms "asylum; training; CAT; asylum; torture; cross" to search Outlook. Schurkamp Decl. ¶ 24. But the supplemental declaration suggests the Baltimore office used the same terms across Outlook and SharePoint. Suppl. Schurkamp Decl. ¶ 10. The supplemental declaration's search term list drops "OPLA Everywhere," adds "instructions, training and guidance," and contains a confusing group of duplicative terms. *Id.* (identifying the search terms as "'instructions, training and guidance,' as well as 'asylum,' 'CAT,' 'torture' and 'cross' 'asylum,' 'CAT,' 'torture' and 'cross'"). Defendants do not identify any search terms used for the manual computer search in Baltimore. Schurkamp Decl. ¶ 24. The court knows even less about the search terms used by the Arlington office. Arlington's Deputy Chief Counsel searched Outlook "for attorney trainings 'conducted at the OPLA-Washington D.C. offices' and 'Chief Counsel's Arlington Office'" using "search terms responsive to the Plaintiff's FOIA request." *Id.* ¶ 26. But the specific search terms are nowhere in Defendants' declarations. Without this basic information, the court cannot determine whether Defendants' efforts were reasonably calculated to recover the responsive records. *Jud. Watch*, *Inc. v. U.S. Dep't of Just.*, 185 F. Supp. 2d 54, 63 (D.D.C. 2002).

  In sum, the court lacks sufficient information to assess whether Defendants conducted an adequate search. Defendants' and Plaintiff's motions for summary judgment will be denied without prejudice as to Plaintiff's First and Second Requests. Defendants may re-file a motion

for summary judgment with a sufficiently detailed and nonconclusory affidavit clarifying the steps taken to locate and produce responsive records.  Plaintiffs are also granted leave to re-file a cross-motion for summary judgment.

### B.  FOIA Exemption 5

Exemption 5 permits an agency to withhold materials normally privileged in the civil discovery context, including documents covered by deliberative process privilege, attorney work product privilege, and/or attorney-client privilege.  *Tax Analysts v. IRS*, 117 F.3d 607, 616 (D.C. Cir. 1997); *Jud. Watch, Inc. v. Dep't of Just.*, 365 F.3d 1108, 1113 (D.C. Cir. 2004).  "To justify summary judgment, a declaration must provide detailed and specific information demonstrating that material withheld is logically within a domain of the exemption claimed." *Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Just.*, 58 F.4th 1255, 1270 (D.C. Cir. 2023) (quoting *Campbell v. U.S. Dep't of Just.*, 164 F.3d 20, 30 (D.C. Cir. 1998)).  Agencies may take "a categorical approach" to exemptions, but "must provide more than boilerplate statements and generic and nebulous articulations of harm."  *Danik v. U.S. Dep't of Just.*, 463 F. Supp. 3d 1, 10 (D.D.C. 2020) (citations omitted).

Plaintiff challenges Defendants' redactions to two documents: the "212(h) Criminal Waiver Form" and "Persecutor [sic] Training 101."  Pl.'s Cross-MSJ at 21–26, 33–38. Defendants argue it appropriately withheld the information under Exemption 5 based on attorney-work product privilege, attorney-client privilege, and the deliberative process privilege. Defs.' MSJ Ex. A *Vaughn* Index at 2–3, 25–26, ECF No. 26-3 ("Defs.' *Vaughn* Index"). Plaintiff counters that Defendants used an impermissibly "broad-brush" to designate training materials as attorney-work product.  Pl.'s Cross-MSJ at 25–26, 37–38 (citing *Louise Trauma Ctr., LLC v. Dep't of Just.*, No. 20-cv-3517 (RC), 2022 WL 278771, at *5 (D.D.C. Jan. 30, 2022)).

Neither party provided the court with the challenged documents, in redacted or unredacted form. In general, the "agency must provide the reviewing court with materials conveying the nature of the withheld documents in a manner that permits the court to critically evaluate the merit of the agency's claim of privilege." *Delaney, Migdail & Young, Chartered v. IRS*, 826 F.2d 124, 128 (D.C. Cir. 1987) (citing *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 861 (D.C. Cir. 1980)). Courts may "rely centrally on the agency's descriptions of the content of the relevant documents as set forth in its *Vaughn* index and accompanying affidavits" to "ascertain whether . . . the documents requested are exempt from disclosure under the FOIA." *Nat'l Assoc. of Crim. Def. Laws. v. Dep't of Just. Exec. Off. for U.S. Att'ys*, 844 F.3d 246, 250 (D.C. Cir. 2016) (quoting *Assassination Archives & Rsch. Ctr. v. CIA*, 334 F.3d 55, 57 (D.C. Cir. 2003)). In some circumstances, however, courts rely on the redacted documents or conduct an *in camera* inspection. *See Delaney*, 826 F.2d at 128.

Here, the court would benefit from reviewing the challenged documents. *See, e.g., id.* ("The trial judge reviewed the edited memoranda and concluded, as do we, that even their surviving portions constitute attorney work product."); *Covington & Burling v. Food & Nutrition Serv. of U.S. Dep't of Agric.*, 744 F. Supp. 314, 320 n.4 (D.D.C. 1990) ("[I]n reading the documents, the large amount of unredacted material reveals that the redacted material is indeed predecisional and exempt."); *Jett v. FBI*, 241 F. Supp. 3d 1, 14 (D.D.C. 2017) ("[B]y simply reviewing the redacted records the court can easily discern that the FBI conducted a line-by-line segregation review."). Defendants assert that "[a]ll of the information withheld under Exemption (b)(5) is . . . protected from disclosure under the attorney work product doctrine" and, simultaneously, that "the deliberative process privilege applies to all of the redacted communications." Suppl. Schurkamp Decl. ¶¶ 12–13. Without seeing the redacted documents,

the court is wary of Defendants' broad and sweeping statements that distinct privileges apply with perfect uniformity to all redactions.

Both parties' motions for summary judgment will be denied without prejudice as to the application of Exemption 5. Any subsequent motion for summary judgment on this issue should include the challenged documents for the court's evaluation.

### C. Sufficiency of Plaintiff's Fourth Request

Turning to Plaintiff's Fourth Request, the parties dispute whether the request created a duty to search for responsive records. An agency only incurs FOIA obligations if the request "reasonably describes [the] records." *Evans v. Fed. Bureau of Prisons*, 951 F.3d 578, 584 (D.C. Cir. 2020) (citing 5 U.S.C. § 552(a)(3)(A)). "A request reasonably describes records if the agency is able to determine precisely what records are being requested." *Id.* (citing *Kowalczyk v. Dep't of Just.*, 73 F.3d 386, 388 (D.C. Cir. 1996)). It should "enable[] a professional employee of the agency who [is] familiar with the subject area of the request to locate the record with a reasonable amount of effort." *Freedom Watch, Inc. v. Dep't of State*, 925 F. Supp. 2d 55, 61 (D.D.C. 2013) (quoting *Truitt v. Dep't of State*, 892 F.2d 540, 545 n.36 (D.C. Cir. 1990)). The "agency should determine whether, construing the request liberally, 'it in fact has created and retained' responsive records." *Evans*, 951 F.3d at 584 (quoting *Kissinger v. Reps. Comm. for Freedom of the Press*, 445 U.S. 136, 152 (1980)). When the request would require an "unreasonably burdensome search, the agency can decline to process the request." *Nat'l Sec. Couns. v. CIA*, 969 F.3d 406, 410 (D.C. Cir. 2020).

Plaintiff's Fourth Request—seeking all records concerning ICE's "information processing system" and the "electronic searches" it permits—fails to reasonably describe the requested records. 5 U.S.C. § 552(a)(3)(A). Upon receiving Plaintiff's Fourth Request, Defendants "requested clarification . . . because it was not reasonably described." Schurkamp

Decl. ¶ 8. Plaintiff refused, but acknowledged the request lacked a description, stating "[w]e do not know what records you have; therefore, *we cannot describe them*." Suppl. Schurkamp Decl. ¶ 5 (quoting Compl. Ex. 4 at 4) (emphasis added). Without any clarity or direction from Plaintiff, it is unsurprising that Defendants struggled "to determine precisely what records [we]re being requested." *Evans,* 951 F.3d at 583. As drafted, Plaintiff's request does not identify any "information processing systems," any conceivable "searches," any subject matter, or any other narrowing principles. Such "broad sweeping requests lacking specificity are not permissible." *Am. Fed. of Gov't Emps., Local 2782 v. U.S. Dep't of Com.*, 632 F. Supp. 1272, 1278 (D.C. Cir. 1986) (quoting *Marks v. Dep't of Just.*, 578 F.2d 261, 263 (9th Cir. 1978)). Courts have refused to impose FOIA obligations for far narrower requests. *See, e.g.*, *Nat'l Sec. Couns.*, 969 F.3d at 410 (request for "all [CIA] records pertaining to the IBM supercomputer 'Watson' . . . called for an unreasonably burdensome search" that would require the CIA "to search every office for any documents containing the word 'Watson.'"); *Krohn v. Dep't of Just.*, 628 F.2d 195, 198 (D.C. Cir. 1980) (request for specific categories of information regarding "each and every . . . criminal case" in 1977 "is too vague to satisfy the statutory requirement that it reasonably describe the requested records"); *Am. Fed. of Gov't Emps.*, 632 F. Supp. at 1278 (request for "[e]very division or staff administrative office file in the Bureau which records, catalogs, or stores SF–52's or stores promotion recommendation memos, or both" was "an audacious demand" appropriately rejected "as too broad").

Plaintiff urges the court to read subsequent modifications into the request, Pl.'s Reply at 6–7, ECF No. 36, but the request must be read "as drafted, not as either agency officials or [the requester] might wish it was drafted." *Nat'l Sec. Couns.*, 969 F.3d at 410. An agency is not required "to search anew based upon a subsequent clarification." *Kowalczyk*, 73 F.3d at 388.

Imposing ongoing FOIA obligations "each time the agency receives a letter that clarifies a prior request could extend indefinitely the delay in processing new requests." *Id.* "FOIA was not intended to reduce government agencies to full-time investigators" responding to iterative fishing expeditions. *Jud. Watch, Inc. v. Dep't of State*, 177 F. Supp. 3d 450, 457 (D.D.C. 2016). Plaintiff cannot salvage its request by now identifying, for the first time, the specific information systems that it intended the request to encompass. *See* Defs.' Opp'n to Pl.'s Cross-MSJ & Reply at 20 n.1, ECF No. 32. Plaintiff also criticizes Defendants for "misconstru[ing]" its request. Pl.'s Reply at 6. But agencies are not clairvoyant. If Defendants "misconstrued" Plaintiff's broad request, Pl. Reply at 6, Plaintiff bears responsibility for failing to "frame the request[] with sufficient particularity," *Jud. Watch*, 177 F. Supp. 3d at 457.

Plaintiff's Fourth Request "fail[s] to identify the documents sought with any modicum of specificity" and is "thus fatally overbroad." *Freedom Watch*, 925 F. Supp. 2d at 62.. Accordingly, as to Count IV, the court will grant Defendants' motion for summary judgment and deny Plaintiff's cross-motion for summary judgment.

## IV.   CONCLUSION

For the reasons stated above, the court will GRANT in part and DENY without prejudice in part Defendants' Motion for Summary Judgment. Specifically, the court will GRANT Defendants' motion as to Count IV. The court will DENY without prejudice Defendants' motion as to the adequacy of the search for records responsive to Plaintiff's First and Second Requests and on the withholdings under FOIA Exemption 5. The court will DENY without

prejudice Plaintiff's Cross-Motion for Summary Judgment and DENY Plaintiff's Motions for Leave to File a Sur-Reply.[3]

Date: February 27, 2025

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge

---

[3] Plaintiff provides no basis for filing either sur-reply nearly two-years after summary judgment briefing concluded. *See* Mot. for Leave to File at 1, ECF No. 38; Mot. for Leave to File at 1, ECF No. 40. And "the proposed sur reply merely reiterates arguments already made and does not add anything new." *Robinson v. Detroit News, Inc.*, 211 F. Supp. 2d 101, 113 (D.D.C. 2002). Therefore, the court exercises its discretion to deny leave to file. *Id.*