**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **LOUISE TRAUMA CENTER, LLC**, <br><br> Plaintiff, <br><br> v. <br><br> **U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT**, *et al.*, <br><br> Defendants. | No. 20-cv-3787 (TSC) |

**MEMORANDUM OPINION**

Plaintiff Louise Trauma Center submitted several Freedom of Information Act ("FOIA") requests to the Department of Homeland Security ("DHS") seeking the instructions, training material, and guidance that the agency gives to immigration court prosecutors. An earlier round of summary judgment briefing narrowed the issues considerably. What remains is whether Defendants conducted an adequate search for records and properly applied Exemption 5 to narrow sections of a single document. Because they did, the court will GRANT Defendants' Renewed Motion for Summary Judgment, ECF No. 50, and DENY Plaintiff's Renewed Cross Motion for Summary Judgment, ECF No. 53. A separate order will follow this opinion.

## I.    BACKGROUND

Louise Trauma Center is a nonprofit focused on immigrant women who have suffered from gender-based violence. *See* Compl. ¶ 4, ECF No. 1. In 2020, Plaintiff filed a six-count complaint regarding six FOIA requests it submitted to DHS. *See id.* ¶¶ 8, 14, 19, 24, 32, 37. The parties resolved Counts Three, Five, and Six, and moved for summary judgment on the remaining counts. *See* Mem. Op. at 2, 15, ECF No. 42. In 2025, the court granted summary

judgment to Defendants with respect to Count Four, concluding that Plaintiffs' fourth request was "fatally overbroad." *See id.* at 15 (quoting *Freedom Watch, Inc. v. Dep't of State*, 925 F. Supp. 2d 55, 61 (D.D.C. 2013)).  But the court denied summary judgment without prejudice to both parties as to Counts One and Two—the only claims remaining before the court.  *See id.*

Count One concerns Plaintiff's request for "all instructions, training manuals, and guidance given to [Immigration and Customs Enforcement ("ICE")] lawyers at the office of Chief Counsel" in Baltimore, Maryland.  Defs.' Corrected SOMF ¶ 2, ECF No. 54-2.  Count Two involves Plaintiff's request for similar materials given to "ICE lawyers at the Office of Chief Counsel" at the Washington field office.  *Id.* ¶ 4.[1]

The court denied summary judgment on these counts for two reasons.  First, it was "unable to determine" from Defendants' declarations "whether ICE conducted an adequate search" for the requested records at either the Baltimore or Washington field offices.  Mem. Op. at 8.  Second, the court concluded that it needed to conduct an *in camera* inspection of two documents—the "212(h) Criminal Waiver Form" and "Persecutor Law 101"—to ascertain whether Defendants properly redacted those documents under Exemption 5.  *See id.* at 11–13.

The parties have further narrowed their disputes.  Plaintiff no longer challenges the adequacy of the search conducted by the Baltimore field office.  *See* Pl.'s C-MSJ at 11, ECF No. 53.  And Defendants have withdrawn their prior assertion that the "212(h) Criminal Waiver Form" is covered by Exemption 5 and "released the document in full."  Pineiro Decl. ¶ 30 n.3, ECF No. 50-2.  Thus, only two issues remain for the court's resolution: whether the search

---

[1]  Plaintiff submitted the request to the Arlington field office, which has since been renamed the Washington field office.  *See* Pineiro Decl. at p. 4 n.1, ECF No. 50-2.  For simplicity's sake, the court will refer to it only as the Washington field office.

conducted by the Washington field office was adequate, and whether "Persecutor Law 101" was properly redacted under Exemption 5.

## II.    ANALYSIS

### a.  Adequacy of the Search

"To prevail on summary judgment" in a FOIA case, the "'agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can reasonably be expected to produce the information requested.'" *Reps.' Comm. for Freedom of the Press v. FBI*, 877 F.3d 399, 402 (D.C. Cir. 2017) (quoting *Oglesby v. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)).  "An agency need not search every record system or demonstrate that all responsive documents were found and that no other relevant documents could possibly exist." *Watkins L. & Advoc., PPLC v. Dep't of Just.*, 78 F.4th 436, 442 (D.C. Cir. 2023) (cleaned up).  Rather, the agency need only show that its search was "reasonably calculated to uncover all relevant documents." *Machado Amadis v. Dep't of State*, 971 F.3d 364, 368 (D.C. Cir. 2020) (cleaned up).  "Agencies can satisfy this burden through a reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials . . . were searched." *Id.* (quoting *Oglesby*, 920 F.2d at 68).  Such "affidavits are accorded a presumption of good faith." *Kowal v. Dep't of Just.*, 107 F.4th 1018, 1027 (D.C. Cir. 2024) (cleaned up).

Defendants have met their burden.  The Declaration submitted by ICE FOIA Director Fernando Pineiro describes the search conducted by the Washington office in reasonable detail and shows that the search was adequate.  As the declaration explains, the Washington field office is led by a Chief Counsel and several Deputy Chief Counsels who oversee many Assistant Chief Counsels—the ICE attorneys who represent the government in removal proceedings before

immigration judges.  Pineiro Decl. ¶¶ 18–21.  The Assistant Chief Counsels would not have

instructions or trainings that the Deputy Chief Counsels did not have because the Assistants are

line attorneys and therefore did not themselves issue instructions or training materials but rather,

only received such materials from supervisors.  *Id.* ¶ 23.  And "each Deputy Chief Counsel

maintained the exact same instructions and trainings as one another because they each had

oversight over all the relevant subject matter areas."  Suppl. Pineiro Decl. ¶ 4, ECF No. 55-1.

Thus, Plaintiff's FOIA request was handled by a single Deputy Chief Counsel in the Washington

field office.  Pineiro Decl. ¶¶ 22–24; *see also* Suppl. Pineiro Decl. ¶ 4.

When the Washington office issues instructions, training materials, or guidance to its

attorneys, "it either saves them in [certain] SharePoint folders . . . or emails them to the entire

Washington" office.  Pineiro Decl. ¶ 25.  "There are no other record systems" where responsive

material could be located.  *Id.* ¶ 26.  Accordingly, the Deputy Chief Counsel who handled

Plaintiff's request searched her Outlook for office-wide emails and the relevant SharePoint

folders.  *Id.* ¶ 24.  Specifically, the Deputy Chief Counsel manually reviewed all emails in her

Outlook folder labeled "##Chief Counsel Office – Arlington VA" because she maintained a

practice of filing "all emails sent to the entire Washington" office in that folder.  *Id.* ¶ 24.  The

Declaration clarifies that "search terms were not needed" to conduct this review "because of the

way [the Deputy Chief Counsel] stored her [Outlook] records."  *Id.*  The Deputy Chief Counsel

also manually reviewed all Washington office "SharePoint folders that contained instructions,

training materials, and guidance," including folders labeled "Alert Guidance," "Office Wide

Emails," "New Attorney Orientation," "Policy Emails and Documents," "Priorities," and

"Trainings."  *Id.*  Again, the Deputy Chief Counsel "did not use search terms because" she

"manually reviewed each file in the only SharePoint" folders "where responsive records might

be." *Id.* Because the Deputy Chief Counsel thoroughly searched the two locations where training material and guidance would be located, the search was "reasonably calculated to uncover all relevant documents" and therefore adequate. *Machado Amadis*, 971 F.3d at 368 (cleaned up).

Plaintiff raises a single objection to the search conducted by the Washington office, that although the Washington office has eight Deputy Chief Counsels, only one of them searched for responsive records. *See* Pl.'s C-MSJ at 11–13. In Baltimore, by contrast, the Chief Counsel herself searched for records, and then asked each of her Deputy Chief Counsels and a senior attorney to "review . . . the records [she] identified to determine whether there may be additional records." Pineiro Decl. ¶¶ 12, 16.

Plaintiff's argument is unavailing. It was enough for only one Deputy Chief Counsel to conduct the search. When the Washington office issued guidance or training materials, it either saved the materials to certain SharePoint folders or emailed them office-wide. *See* Pineiro Decl. ¶ 25. The Deputy Chief Counsel who conducted the search manually reviewed those folders and all office-wide emails. *Id.* ¶¶ 24. It was not necessary for her seven counterparts to conduct a duplicative search of the same locations. *See id.* ¶ 26. Plaintiff offers no reason to conclude otherwise, and mere speculation that one of the other deputies might have had something more is insufficient to overcome the presumption of good faith owed to the Pinerio Declaration. *See Kowal*, 107 F.4th at 1027.

Nor does it matter that the Deputy Chief Counsel did not consult with her fellow deputies like the Chief Counsel did in Baltimore. Consultation may be warranted in some other case, but not here. The Deputy Chief Counsel knew where all responsive records were located and thoroughly checked those locations. *See* Pinero Decl. ¶¶ 23–26. That the Baltimore office took

an extra step of diligence beyond what was required does not alter this conclusion.  Although an agency must explain any "wide variance[s] in the search terms" or methodology used by different offices conducting a similar search, FOIA does "not require complete uniformity" and the difference Plaintiff identifies is merely an optional cross-check that Baltimore added to its search, not a wide variance in methodology.  *New Orleans Workers' Ctr. v. ICE*, 373 F. Supp. 3d 16, 46–47 (D.D.C. 2019) (cleaned up).  In sum, the search conducted by the Washington office was adequate.

### b.  Exemption 5

Plaintiff also challenges Defendants' redactions to a document titled "Persecutor Law 101."  *See* Pl.'s C-MSJ at 13–23.  The redacted portions of that document contain "legal tips" and "litigation strategy for attorneys" litigating immigration court matters against noncitizens alleged to be persecutors.  Pineiro Decl. ¶ 35.  Under the "persecutor bar," noncitizens who participated in the persecution of others are barred from receiving U.S. immigration benefits.  *See Negusie v. Holder*, 555 U.S. 511, 513 (2009).

Defendants justify the redactions under Exemption 5, which "allows the government to withhold records from FOIA disclosure under at least three privileges: the deliberative-process privilege, the attorney-client privilege, and the attorney work-product privilege."  *Nat'l Ass'n of Crim. Def. Lawyers v. Dep't of Just. Exec. Off. for U.S. Attys.* ("*NACDL*"), 844 F.3d 246, 249 (D.C. Cir. 2016).  Although Defendants invoke both the attorney-client privilege and the attorney work-product privilege,[2] the court focuses on the latter because it is sufficient to justify every redaction.

---

[2]  Defendants have withdrawn their assertion of the deliberative-process privilege.  *See* Defs.' Reply at 6, ECF No. 55.

"Courts have long recognized that materials prepared by one's attorney in anticipation of litigation are generally privileged[.]" *NACDL*, 844 F.3d at 250. The privilege is meant to give attorneys "a zone of privacy within which" to plan for and strategize about anticipated litigation. *Id.* at 251 (cleaned up). Because of its essential role facilitating the adversarial process, the privilege "should be interpreted broadly and held largely inviolate." *Judicial Watch, Inc. v. Dep't of Just.*, 432 F.3d 366, 369 (D.C. Cir. 2005). There is, however, "one significant limitation of the doctrine"—the withheld documents must have been "prepared in the contemplation of litigation." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 864 (D.C. Cir. 1980).

That does not mean that the agency must have a specific case or claim in mind. *See NACDL*, 844 F.3d at 252 (rejecting argument that document "cannot qualify for the work-product privilege because, even if it was created in contemplation of litigation generally, it was not prepared in anticipation of litigating a specific claim or case"). In *Schiller v. NLRB*, the D.C. Circuit held that the work-product "privilege covered NLRB documents providing direction and advice to agency lawyers on the litigation of cases under the Equal Access to Justice Act." *NACDL*, 844 F.3d at 253 (citing *Schiller v. NLRB*, 964 F.2d 1205, 1208 (D.C. Cir. 1992)). The Circuit explained that "Exemption 5 extends to documents prepared in anticipation of foreseeable litigation, even if no specific claim is contemplated." *Schiller*, 964 F.2d at 1208. And in *NACDL*, the D.C. Circuit held that the Blue Book—a litigation manual which provided prosecutors with general advice regarding how to litigate discovery issues—was subject to the attorney work-product privilege. 844 F.3d at 251–52. Even though the manual concerned general litigation strategy and not any specific case, the Circuit credited the Justice Department's argument that the Blue Book's disclosure would have "essentially provide[d] a road map to the strategies federal prosecutors deploy in criminal cases." *Id.* at 252 (cleaned up).

Having conducted an *in camera* review of "Persecutor Law 101," the court concludes that the redacted material is covered by the work-product privilege.  The document was prepared to train ICE attorneys in anticipation of immigration court proceedings against alleged persecutors.  *See* Pineiro Decl. ¶¶ 34–35.  Such litigation is not just foreseeable, but routine, and "the litigation strategies" contained in the document "are still relevant and used today."  Suppl. Pineiro Decl. ¶ 8.  Much like the documents at issue in *Schiller* and *NACDL*, the document here contains "lawyer-prepared . . . tips and advice for litigating cases" against alleged persecutors.  *In re Sealed Case*, 146 F.3d 881, 885 (D.C. Cir. 1998) (describing *Schiller*).  The court's review confirms, moreover, that the narrow redactions are limited to strategic advice, and all reasonably segregable material has been disclosed.

That does not end the analysis.  Even where the work-product privilege applies, an agency may withhold information "only if . . . the agency reasonably foresees that disclosure would harm an interest protected by" that privilege.  5 U.S.C. § 552(a)(8)(A)(i)(I).  This "foreseeable harm requirement imposes an independent and meaningful burden on agencies." *Reps.' Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 369 (D.C. Cir. 2021) (cleaned up).  In general, agencies must give "a focused and concrete demonstration of why disclosure of the particular type of material at issue will, in the specific context of the agency action at issue, actually impede" the interests protected by the work-product privilege.  *Id.* at 370.  "However, even when an agency's declaration falls short of this standard," courts "will uphold the agency's withholding of documents" where "the foreseeability of harm is manifest from the very context and purpose of the documents."  *Rudometkin v. United States*, 140 F.4th 480, 493 (D.C. Cir. 2025) (cleaned up).

That is the case here.  Although Defendants' declarations address foreseeable harm to work-product interests only briefly, *see* Pineiro Decl. ¶ 32, that harm is manifest from context and from the court's *in camera* review.  Disclosure would "essentially provide a road map to the strategies" used by ICE attorneys in cases against alleged persecutors.  *See NACDL*, 844 F.3d at 252 (cleaned up).  This would undermine the adversarial process by deterring ICE attorneys from sharing litigation strategy in writing "for fear that the information might be disclosed to . . . adversaries to the detriment of the government's current and future litigating positions."  *Id.* (cleaned up).  Accordingly, Defendants' narrow redactions were proper under Exemption 5.

## III.    CONCLUSION

For the foregoing reasons, the court will GRANT Defendants' Renewed Motion for Summary Judgment, ECF No. 50, and DENY Plaintiff's Renewed Cross Motion for Summary Judgment, ECF No. 53.  A separate order will follow this opinion.

Date: August 7, 2026

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge